**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

AMBASE CORPORATION, 111 WEST 57TH MANAGER FUNDING LLC, and 111 WEST 57TH INVESTMENT LLC, on behalf of itself and derivatively on behalf of 111 WEST 57TH PARTNERS LLC,

                Plaintiffs,

    -against-

111 WEST 57TH SPONSOR LLC, 111 WEST 57TH JDS LLC, PMG WEST 57TH STREET LLC, 111 WEST 57TH CONTROL LLC, 111 WEST 57TH DEVELOPER LLC, 111 WEST 57TH KM EQUITY LLC, 111 WEST 57TH KM GROUP LLC, KEVIN MALONEY, MATTHEW PHILLIPS, MICHAEL STERN, NED WHITE, 111 CONSTRUCTION MANAGER LLC, PROPERTY MARKETS GROUP, INC., JDS DEVELOPMENT LLC, and JDS CONSTRUCTION GROUP LLC,

                Defendants,

111 WEST 57TH PARTNERS LLC,

                Nominal Defendant.

Docket No. 1:18-cv-5482 (AT)

---

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN**
**<u>FURTHER SUPPORT OF THEIR MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT .............................................................................................................2

I.  PLAINTIFFS FAIL TO PLEAD A PATTERN OF RACKETEERING
    ACTIVITY....................................................................................................2

    A.  Plaintiffs Disregard the Cases on Point and Rely on Inapposite Ones ...................2

    B.  Plaintiffs Cannot Refute That Their RICO Claims Sound in Contract...................3

    C.  Plaintiffs Fail to Show Predicate Acts Spanning Longer Than 15 Months ............7

    D.  Plaintiffs Fail the Multi-Factor Test .................................................................10

    E.  Plaintiffs Do Not Allege an Open-Ended Pattern of Racketeering.......................12

II.  THE STRICT FORECLOSURE BREAKS THE CHAIN OF CAUSATION .................14

III.  PLAINTIFFS' ENTERPRISE ALLEGATIONS FAIL ...........................................14

    A.  Count I Fails to Allege a Distinct RICO Enterprise ...........................................14

    B.  Plaintiffs Do Not Allege That Defendants Phillips or White Were
    Responsible for Directing any Enterprise's Affairs............................................15

IV.  PLAINTIFFS' CONSPIRACY CLAIMS FAIL....................................................16

V.  PLAINTIFFS' FRAUD CLAIM MUST BE DISMISSED .......................................17

    A.  Plaintiff Cannot Demonstrate a Fraudulent Misrepresentation
    Collateral or Extraneous to the Contract.........................................................17

    B.  Plaintiffs' Collective Pleading is Insufficient ....................................................18

VI.  PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTY FAILS ....................18

VII.  THE PREVIOUSLY DISMISSED BREACH OF CONTRACT CLAIMS MUST
     BE DISMISSED .........................................................................................19

VIII.  THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION....................19

CONCLUSION........................................................................................................20

509180-16-W

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Berg Harmon Assoc.*,
  790 F. Supp. 1222 (S.D.N.Y. 1992) .......................................................................17

*Advanced Marine Techs., Inc. v. Burnham Sec., Inc.*,
  16 F. Supp. 2d 375 (S.D.N.Y. 1998) ......................................................................18

*Am. Sales Co., Inc. v. AstraZeneca AB*,
  2011 WL 1465786 (S.D.N.Y. Apr. 14, 2011) .........................................................18

*Angermeir v. Cohen*,
  14 F. Supp. 3d 134 (S.D.N.Y. 2014) .........................................................................8

*Bridge v. Phoenix Bond & Indemnity Co.*,
  553 U.S. 639 (2008) .....................................................................................................9

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
  98 F.3d 13 (2d Cir. 1996) .........................................................................................4, 5

*In re Cardiac Devices Qui Tam Litig.*,
  221 F.R.D. 318 (D. Conn. 2004) ................................................................................8

*Casio Computer Co. v. Sayo*,
  2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ........................................................16

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
  187 F.3d 229 (2d Cir. 1999) ...............................................................................12, 13

*Crawford v. Franklin Credit Mgmt. Corp.*,
  758 F.3d 473 (2d Cir. 2014) ..........................................................................2, 12, 13

*Dale v. Banque SCS Alliance S.A.*,
  2005 WL 2347853 (S.D.N.Y. Sept. 22, 2005) .......................................................15

*Davis v. Yeroushalmi*,
  985 F. Supp. 2d 349 (E.D.N.Y. 2013) .....................................................................19

*Devos, Ltd. v. Record*,
  2015 WL 9593616 (E.D.N.Y. Dec. 24, 2015) ........................................................13

*Durham v. Business Mgmt. Assocs.*,
  847 F.2d 1505 (11th Cir. 1988) .................................................................................8

*FD Prop. Holding, Inc. v. US Traffic Corp.*,
  206 F. Supp. 2d 362 (E.D.N.Y. 2002) .....................................................................17

*FindTheBest.com, Inc. v. Lumen View Tech. LLC,*
  20 F. Supp. 3d 451 (S.D.N.Y. 2014)................................................................10, 19

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,*
  385 F.3d 159 (2d Cir. 2004).........................................................3, 10, 11, 19

*Flexborrow LLC v. TD Auto Finance LLC,*
  255 F. Supp. 3d 406 (E.D.N.Y. 2017) ........................................................17, 19

*Four Finger Art Factory, Inc. v. Dinicola,*
  2000 WL 145466 (S.D.N.Y. Feb. 9, 2000)................................................17

*Fresh Meadow Food Servs., LLC v. RB 175 Corp.,*
  292 Fed. App'x 94 (2d Cir. 2008)................................................................3, 11

*GICC Cap. Corp. v. Tech. Fin. Grp., Inc.,*
  67 F.3d 463 (2d Cir. 1995).........................................................................3, 13

*H.J. v. Nw. Bell Tell. Co.,*
  492 U.S. 229 (1989)........................................................................................3

*Hecht v. Commerce Clearing House, Inc.,*
  897 F.2d 21 (2d Cir. 1990)...........................................................................16, 17

*Holmes v. Securities Investor Protection Corp.,*
  503 U.S. 258 (1992)........................................................................................14

*Johnson v. Carlo Lizza & Sons Paving, Inc.,*
  160 F. Supp. 3d 605 (S.D.N.Y. 2016)..........................................................19

*Klein & Co. Futures v. Bd. of Trade of City of New York,*
  464 F.3d 255 (2d Cir. 2006)...........................................................................19

*Kolar v. Preferred Real Estate Investments, Inc.,*
  361 Fed. App'x 354 (3d Cir. 2010).................................................................4

*LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,*
  951 F. Supp. 1071 (S.D.N.Y. 1996)..............................................................15

*Maiz v. Virani,*
  253 F.3d 641 (11th Cir. 2001) .......................................................................3

*MashreqBank, psc v. ING Grp. N.V.,*
  2013 WL 5780824 (S.D.N.Y. Oct. 25, 2013) .................................................17

*McGee v. State Farm Mut. Auto Ins. Co.,*
  2009 WL 21232439 (E.D.N.Y. July 10, 2009)................................................10

*McLaughlin v. Anderson,*
  962 F.2d 187 (2d Cir. 1992)............................................................................3

*MeterLogic, Inc. v. Copier Sols., Inc.*,
   126 F. Supp. 2d 1346 (S.D. Fla. 2000) ................................................................8

*In re Motel 6 Secs. Litig.*,
   1997 WL 154011 (S.D.N.Y. Apr. 2, 1997).............................................................9

*Motorola Credit Corp. v. Uzan*,
   338 F.3d 39 (2d Cir. 2004)...................................................................................19

*Niemi v. Lasshofer*,
   770 F.3d 1331 (10th Cir. 2014) ...........................................................................14

*Palatkevich v. Choupak*,
   2014 WL 1509236 (S.D.N.Y. Jan. 24, 2014) .......................................................15

*Procter & Gamble Co. v. Big Apple Indus. Buildings, Inc.*,
   879 F.2d 10 (2d Cir. 1989)......................................................................................3

*R.C.M. Executive Gallery Corp v. Rols Cap. Co.*,
   1997 WL 27059 (S.D.N.Y. Jan. 23, 1997) ...........................................................15

*Redtail Leasing, Inc. v. Bellezza*,
   1997 WL 603496 (S.D.N.Y. Sept. 30, 1997).......................................................15

*Reeves v. Ernst & Young*,
   507 U.S. 170 (1993)...............................................................................................15

*Reich v. Lopez*,
   858 F.3d 55 (2d Cir. 2017)......................................................................................8

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*,
   84 F.3d 629 (2d Cir. 1996)......................................................................................6

*Salinas v. United States*,
   522 U.S. 52 (1997).................................................................................................16

*Schlaifer Nance & Co. v. Estate of Warhol*,
   119 F.3d 91 (2d Cir. 1997)....................................................................................12

*Schmidt v. Fleet Bank*,
   16 F. Supp. 2d 340 (S.D.N.Y. 1998).....................................................................15

*Schuh v. Druckman & Sinel, L.L.P.*,
   2008 WL 542504 (S.D.N.Y. Feb. 29, 2008).........................................................10

*Spira v. Nick*,
   876 F. Supp. 553 (S.D.N.Y. 1995) ........................................................................8

*Spool v. World Child International Adoption Agency*,
   520 F.3d 178 (2d Cir. 2008)....................................................................................7

*Strong & Fisher, Ltd. v. Maxima Leather, Inc.*,
    1993 WL 277205 (S.D.N.Y. July 22, 1993) ........................................................15

*Tardibuono-Quigley v. HSBC Mortgage Corp. (USA)*,
    2017 WL 12126925 (S.D.N.Y. Mar. 30, 2017) ...............................................4, 5

*In re Terrorist Attacks on Sept. 11, 2001*,
    392 F. Supp. 2d 539 (S.D.N.Y. 2005) ............................................................15

*The Topps Co. Inc., v. Cadbury Stani S.A.I.C.*,
    380 F.Supp.2d 250 (S.D.N.Y. 2005) ..............................................................17

*Town of Kearny v. Hudson Meadows Urban Renewal Corp.*,
    829 F.2d 1263 (3d Cir. 1987) ..........................................................................10

*United States v. Veliz*,
    623 Fed. Appx. 539 (2d Cir. 2015) ...................................................................8

*Vemco, Inc. v. Camaradella*,
    23 F.3d 129 (6th Cir. 1994) ..............................................................................3

*Wells Fargo Bank Nw., N.A. v. Sundowner Alexandria, LLC*,
    2010 WL 3238948 (S.D.N.Y. Aug. 16, 2010) ...................................................7

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*,
    530 F. Supp. 2d 486 (S.D.N.Y. 2007) ..............................................................9

**Other Authorities**

Fed. R. Civ. Pro. 8(a) ..............................................................................................16

Fed. R. Civ. Pro. 9(b) ................................................................................................8

Fed. R. Civ. Pro. 9(g) ..............................................................................................18

Second Circuit Local Rule 32.1.1 ...............................................................................3

## PRELIMINARY STATEMENT[1]

Plaintiffs' Opposition provides no valid basis for their continuing efforts to convert this contract dispute into a treble damages RICO claim.  Instead of focusing on the fatal pleading defects in the TAC, Plaintiffs grossly inflate their own insufficient allegations, make up new ones out of whole cloth, and distort case law.  However, no amount of fiction or distortion can save Plaintiffs' meritless claims from dismissal.

As shown in the Motion, Plaintiffs have not pled (and cannot plead) a valid civil RICO claim.  Nothing in Plaintiffs' Opposition alters this conclusion.  Among other things, Plaintiffs have not pled (i) the minimum temporal duration required, (ii) pattern, (iii) continuity, (iv) proximate cause, or (v) distinctiveness.  Indeed, Plaintiffs cannot articulate how this alleged single-victim, single-scheme, single-project, and limited participant scheme could possibly meet the governing multi-factor pleading requirements set by the Second Circuit.  This is particularly true where, as here, the alleged harm was caused by Plaintiffs' own misconduct.

Plaintiffs likewise have no meaningful answer to the showing that the TAC is essentially devoid of allegations against defendants Matthew Phillips and Ned White sufficient to sustain the claims against them.  And the TAC's two RICO conspiracy claims fail to allege any agreement among the purported co-conspirators, dooming the claims.  Accordingly, Plaintiffs' RICO claims should be dismissed in their entirety with prejudice, and the Court should decline jurisdiction over the remaining state law claims.

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the TAC, or Defendants' Memorandum of Law in Support of Its Motion to Dismiss, dated Aug. 7, 2018 (Dkt. No. 37) (the "Motion" or "Mot.").   Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Third Amended Complaint, dated Sept. 11, 2018 (Dkt. No. 47) is cited here in as the "Opposition" or "Opp."

Should this Court choose to review Plaintiffs' previously asserted state-law claims, it should dismiss those claims as well. Plaintiffs' attempts to salvage their fraud claim, as well as their previously dismissed breach of fiduciary duty and contract claims, are hopeless. The purported fraudulent misrepresentations are squarely covered by the relevant contracts, and it is well settled that an alleged contract breach is not also a fraud claim. Law of the case likewise mandates dismissal of the previously dismissed fiduciary duty and contract claims.

## ARGUMENT

### I. PLAINTIFFS FAIL TO PLEAD A PATTERN OF RACKETEERING ACTIVITY

#### A. Plaintiffs Disregard the Cases on Point and Rely on Inapposite Ones

Plaintiffs barely attempt to distinguish the three circuit court decisions, with facts nearly identical to those here, that dismissed limited-scheme, limited-victim, contract-based RICO claims, arising in disputes between business partners. Mot. 10-12. Plaintiffs baldly assert that those cases are "distinguishable," while offering only cursory, non-distinguishing references to the legal bases for those decisions. Opp. 28-29. Indeed, while Plaintiffs dismiss those decisions as "non-binding," the Second Circuit has cited *Efron v. Embassy Suites (Puerto Rico) Inc.*, 223 F.3d 12 (1st Cir. 2000), with approval for the very principle that "[g]iven the routine use of mail and wire communications in business operations . . . 'RICO claims premised on mail or wire fraud must be particularly scrutinized because of the ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.'" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014).

Plaintiffs do even less in failing to address this Court's many decisions (Mot. 9-10 & n.4) that dismissed RICO claims that were, as here, dressed-up contract claims. Plaintiffs instead rely on inapposite criminal prosecutions that did not involve any RICO claim at all. Opp. 25 (citing *U.S. v. Naiman*, 211 F.3d 40 (2d Cir. 2000), and *U.S. v. Frank*, 156 F.3d 332 (2d Cir. 1998)).

The other cases Plaintiffs cite do not help them either. *Maiz v. Virani*, 253 F.3d 641 (11th Cir. 2001), did not address continuity or involve a dispute between business partners in a single real estate project, but instead concerned a far-reaching fraudulent scheme to sell interests in land to over 53 Mexican residents through fraudulent sales brochures and sales pitches to victims induced to travel to the United States. *Id.* at 651. *Procter & Gamble Co. v. Big Apple Indus. Buildings, Inc.*, 879 F.2d 10 (2d Cir. 1989), was decided prior to the Supreme Court's seminal RICO pattern decision in *H.J., Inc. v. Nw. Bell Tell. Co.*, 492 U.S. 229 (1989), and has been subsequently limited and reconstrued in light of that precedent.[2]  And *Fresh Meadow Food Servs., LLC v. RB 175 Corp.*, 292 Fed. App'x. 94, 95-96 (2d Cir. 2008), is a summary order that does "not have precedential effect" under Second Circuit Local Rule 32.1.1, has never been cited by any circuit court, and involved a several-year fraudulent scheme with multiple victims that criminally misrepresented, including through a forged affidavit, the environmentally contaminated nature of real property.

### B.  Plaintiffs Cannot Refute That Their RICO Claims Sound in Contract

Although Plaintiffs argue that their RICO claims do not sound in contract, the allegations of the TAC and Plaintiffs' Opposition prove otherwise.

To begin, although the alleged oral statement made in June 2013 does not constitute a valid predicate act for multiple reasons (Mot. 17-19), that statement is, at most, an alleged ***promise*** of

---

[2] *See Vemco, Inc. v. Camaradella,* 23 F.3d 129, 135 (6th Cir. 1994) (declining to adopt the reasoning of *Procter & Gamble*, in part, because its definition of continuity is "overinclusive in light of the Supreme Court's subsequent discussion in *H.J. Inc.*"); *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 467 (2d Cir. 1995) (construing and limiting *Procter & Gamble* as having been decided "prior to the Supreme Court's decision in *H.J., Inc.*"); *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 n. 19 (2d Cir. 2004) (construing *Procter & Gamble* as involving a scheme that "would necessarily involve predicate acts over the course of a decade"); *McLaughlin v. Anderson*, 962 F.2d 187, 198 (2d Cir. 1992) (describing *Procter & Gamble* as alleging schemes "that would likely continue through the duration of the ten-year lease" at issue in the case).

future performance. Even straining as Plaintiffs do to characterize this alleged promise as a "misrepresentation," they admit that this "misrepresentation" is at bottom that "[Defendants] would be able … *to obtain* [in the future] a timely construction loan." Opp. 24 (emphasis in original). Plaintiffs' effort to re-characterize this allegation fails because nowhere does the TAC allege (a) any misrepresentation about any specific net worth or liquidity; (b) anything about what net worth or liquidity requirements were "anticipated" (Opp. 17) to be imposed by unknown, prospective lenders; or (c) any facts to support the assertion that Defendants did not intend to pursue timely construction loans.[3] A dispute over an alleged promise of future performance cannot be "transmute[d] into RICO claims by simply appending the terms 'false' and 'fraudulent.'" *Kolar v. Preferred Real Estate Invs., Inc.*, 361 Fed. App'x 354, 364 (3d Cir. 2010). Moreover, Plaintiffs' argument that the promise to obtain a timely construction loan was "confirm[ed]" by the JVA itself (Opp. 18) only underscores that this alleged oral "representation" was not extraneous or collateral to the JVA, and therefore cannot form a separate fraud claim. *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996).

Other predicate acts urged by Plaintiffs – the alleged "false representations" that capital calls were not funding Manager Overruns in breach of the JVA, supposedly concealing that JDS was the beneficiary of an insurance policy paid for by the Company, and funding excessive payroll expenses – do not merely "dovetail with certain contract claims," as Plaintiffs admit (Opp. 25), but are inextricably intertwined with and dependent upon, and seek the same damages as, the contract claims. For example, the allegedly "false statement" in each capital call is the statement that the capital call was made "[p]ursuant to Section 3.2(a)" of the JVA. This is nothing more than a dispute over the interpretation of a contract (not really a statement of "fact" that is "true" or

---

[3] Indeed, the TAC *admits* that the parties contemplated from the outset it might take up to two years before construction loans were obtained to repay the Annaly Acquisition Loan. TAC ¶ 42.

"false"), and the only way to prove this statement is purportedly "false" entails proving the breach of contract claim (i.e., determining whether the capital calls breached the JVA because they funded Manager Overruns). *See Tardibuono-Quigley v. HSBC Mortgage Corp. (USA)*, 2017 WL 12126925, at *11 (S.D.N.Y. Mar. 30, 2017) ("'While there may be a *disagreement* regarding the terms in the mortgage agreement . . . a mere disagreement does not create additional liability'" because "a breach of contract normally does not constitute the predicate act of mail or wire fraud.") (citations omitted) (emphasis in original). And the alleged damages for the "fraud" and contract claims are identical. The alleged "misrepresentations" are surplusage and ***not*** collateral to the contract. *Bridgestone/Firestone*, 98 F.3d at 20.

Similarly, the allegations about how JDS obtained insurance for the project turn on whether JDS was within its contractual rights to procure that insurance through its already existing relationships and credit, with JDS instructing the insurer to reimburse any unused deposits or escrows back to the project.[4] Whether or not the Company funded excessive payroll expenses also turns on the contractual rights of the parties and whether the agreements permit those expenses (which they do). *See Tardibuono-Quigley*, 2017 WL12126925, at *11.

The remaining predicate acts asserted by Plaintiffs supposedly injured them by "prevent[ing] Plaintiffs from exercising their Equity Put Right." Opp. 27; *see id.* 26. On their very face, these alleged predicate acts depend on the existence or not of a contractual right.

---

[4] Plaintiffs' contract claim about the insurance policy seeks only declaratory relief because no loss or injury has occurred from procuring the insurance policy under JDS's name and relationship, with written instructions to the insurer to refund any unused deposits or escrows to the Company. Plaintiffs' real concern about this procurement is that the instructions to refund any unused deposits to the Company "could . . . be unilaterally overwritten by Stern at any time." TAC ¶ 121. Of course, the TAC does not allege those instructions were ever revoked.

Moreover, Plaintiffs **have**, in fact, purported to exercise that contractual right and assert a duplicative contract claim based on it.  TAC ¶¶ 353-55, 449-54, 481(k), (l).[5]

Ultimately, perhaps the most telling fact that the RICO claims sound in contract is that every predicate act duplicates a breach of contract claim (Mot. 13-15) and seeks identical damages as the contract claims (*id*. 28-29).  Significantly, Plaintiffs do not distinguish the cases cited by Defendants in support of this basic principle (*id*. 28-29), much less explain how the allege "misrepresentations," as opposed to the alleged underlying contractual breaches, caused Plaintiffs any harm.  Opp. 30.  This further demonstrates that the RICO claims sound in contract, as well as lack the essential element of proximate cause.  Mot 28-29.

While Plaintiffs try to make much about supposedly "fictional contracts," that allegation is based **solely** on two words in a single e-mail.  Significantly, the TAC is devoid of **any factual** allegations to support that conclusion.  Nowhere does the TAC identify a **single** contract that is purportedly "fictional."   Despite Plaintiffs' access to over 350,000 pages of documents, interrogatory answers, and other discovery before drafting the TAC, Plaintiffs are still unable to allege a single **fact** that any contract was nonexistent, false, or fraudulent.  This allegation is entirely conclusory and too slender a reed to support the weight that Plaintiffs place on it.  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993).  Additionally, the TAC does not allege how the mail or wires were ever used in connection with any supposed "fictional contracts." *See S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996)

---

[5] The TAC does not and could not allege any harm from any supposed delay in exercising the Equity Put Right.  A valid exercise of that right would permit Plaintiffs to recover their entire investment plus a 20% internal rate of return, calculated as of the date of exercise.  TAC ¶¶ 3(c), 54.  Thus, the later the right is exercised, the more money that Plaintiffs would be entitled to receive if they have a valid contractual claim – which is very much in dispute.  In all events, the allegations about the Equity Put Right sound in contract, not in fraud.

("A complaint alleging mail and wire fraud must show . . . the use of interstate mails or transmission facilities in furtherance of the scheme").[6]

Moreover, Plaintiffs' efforts to cast those two words in a sinister light are not plausibly supported by the TAC which acknowledges that Maloney and Stern have, at times, had a contentious relationship, including exchanging harsh insults and criticisms.  TAC ¶¶ 65, 224. Maloney often complained that JDS and Stern were not providing him with timely information, including not *showing* him contracts that they had negotiated and entered into on behalf of the joint venture.  TAC ¶¶ 218, 224.  This two-word reference is more in line with Maloney's gripes about not *seeing* certain contracts that Stern negotiated and entered into, than it is with any more sinister spin that Plaintiffs try to put on it.  *See Wells Fargo Bank Nw., N.A. v. Sundowner Alexandria, LLC*, 2010 WL 3238948, at *6 (S.D.N.Y. Aug. 16, 2010) ("The Supreme Court has recently found, on two occasions, that a party failed to establish that its claims were plausible when an 'obvious alternative explanation' accounted for the alleged misconduct.") (citations omitted). As Plaintiffs have had extensive discovery and cannot point to any nonexistent, false, or fraudulent contract, and in light of Maloney's complaints about not receiving copies of contracts, this two-word conclusory allegation is insufficient to establish a fraudulent act.

### C.    Plaintiffs Fail to Show Predicate Acts Spanning Longer Than 15 Months

Painfully aware that the TAC, at best, only alleges predicate acts spanning a mere 15 months (Mot. 16-25), Plaintiffs argue that the Second Circuit has "declined to set a rigid two-year floor."  Opp. 16.  But the very case cited by Plaintiffs, *Spool v. World Child International Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008), noted that the Second Circuit has "never held a period

---

[6] Similarly, the Opposition's assertion that Defendants kept "multiple sets of books" is utterly unsupported by any allegations of fact in the TAC.  The allegation cited by the Opposition refers only to the process for developing an *updated budget* for the project.  *See* Opp. 4; TAC ¶ 69.

of less than two years" to be sufficient and that "it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity, particularly where, as here . . . the activities alleged involved only a handful of participants and do not involve a complex, multi-faceted conspiracy." *Id.* at 184 (citation and quotations omitted). The Second Circuit reiterated just last year that a civil RICO claim "generally requires that the crimes extend over at least two years." *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017). Plaintiffs cite no civil RICO case in which closed-ended continuity was established with predicate acts occurring over ***less*** than two years.[7]

Plaintiffs' efforts to stretch the 15-month period beyond two years are equally unsuccessful. As noted above (at 3-4) and in the Motion (at 17-19), the alleged oral promise in June 2013 does not plead a valid predicate act for multiple reasons. In addition to the reasons set forth therein, the Opposition's efforts to excuse the TAC's lack of particularity in pleading this alleged "fraud" are completely unavailing.[8]

With respect to the alleged predicate acts occurring after June 2015, Plaintiffs admit they suffered no injury from them and they "discovered the misstatements [by] Defendants . . . less than two years after they began." Opp. 19, 21. Plaintiffs' argument that they can extend the duration of the alleged scheme by reference to alleged false statements that no one relied upon and caused

---

[7] *United States v. Veliz*, 623 Fed. App'x 539, 540 (2d Cir. 2015) – another summary order without precedential effect – was a ***criminal case*** with ***violent*** predicate acts that ***resulted in death***.

[8] "Alternate means" for pleading with particularity are not applicable here. *See Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1512 (11th Cir. 1988) (affirming use of an affidavit for particularized details on a motion for summary judgment); *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 336-38 (D. Conn. 2004) (Rule 9(b) satisfied when, to protect patient confidentiality, spreadsheets with significant details were given to defendants); *Spira v. Nick*, 876 F. Supp. 553, 556, 559 (S.D.N.Y. 1995) ("extensive, sometimes detailed, affidavit" supported complaint). Plaintiffs' other cases are equally inapposite. *See Angermeir v. Cohen*, 14 F. Supp. 3d 134, 145 (S.D.N.Y. 2014) ("mailings in furtherance of [a] scheme, but which are not themselves false or misleading" do not have to be pleaded with particularity); *Spira*, 876 F. Supp. at 556, 559 (same); *MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1361 (S.D. Fla. 2000) (plaintiff pleaded exact date and time for most of the fraudulent statements and the place where all statements were made).

Plaintiffs no injury is (a) utterly unsupported by any law and (b) turns on two gross misstatements of the law.

First, Plaintiffs do not cite a single case holding that such alleged predicate acts can be used to extend the duration of a RICO pattern, and they ignore the abundant case law (Mot. 20-21) holding that mere acts of cover-up will not extend the duration of a pattern.[9]

Second, Plaintiffs fundamentally misstate two areas of law.  For one thing, Plaintiffs grossly misrepresent the holding of *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008). Contrary to Plaintiffs' assertion (Opp. 1, 14, 27), *Bridge* does ***not*** hold that reliance is unnecessary for a RICO claim based on wire or mail fraud.  The plaintiff in *Bridge* repeatedly lost the bidding in governmental auctions of tax liens, where the defendant won those auctions by repeatedly submitting false certifications on which the county treasurer relied in awarding the liens to defendant over plaintiff.  The issue in *Bridge* was whether plaintiff needed to show ***first-person*** reliance or whether reliance by the treasurer was sufficient, which the Supreme Court held it was. The Supreme Court, however, also held, in language that the Opposition conspicuously omits:

> Of course, none of this is to say that a RICO plaintiff who alleges injury "by reason of" a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations.  In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation.

553 U.S. at 658 (emphasis in original and citation omitted).[10]

---

[9] The cases cited by Plaintiffs (Opp. 19) either support Defendants' position or are distinguishable. *See World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 512-13 (S.D.N.Y. 2007) ("[T]he alleged obstruction, perjury and false statements in 2000 and beyond—shocking as they may be—do not extend the pattern of racketeering activity" because they were not "intended or designed to further [a] still-alive scheme, but instead only to cover up past misconduct"); *In re Motel 6 Secs. Litig.*, 1997 WL 154011, at *4 (S.D.N.Y. Apr. 2, 1997) (merely mentioning cover-up activity occurring contemporaneously with other, valid predicate acts that raised questions of fact on the issue of continuity).

[10] *Accord In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 119 (2d Cir. 2013) (citation omitted) ("'[P]roof of misrepresentation—even widespread and uniform misrepresentations— only satisfies half of the equation' . . . because plaintiffs must also demonstrate reliance on a

For another thing, Plaintiffs confuse the principles of RICO **standing** with the RICO **pattern** requirement.  Plaintiffs' standing cases (Opp. 14) have nothing to do with the separate requisite element of alleging a pattern of racketeering activity.  The purpose of allowing a plaintiff with just one injury to have standing is plain:  without such rule, an enterprise could withstand RICO scrutiny simply if the scheme targeted multiple victims, but each victim suffered only one injury.  *Town of Kearny v. Hudson Meadows Urban Renewal Corp*., 829 F.2d 1263, 1268 (3d Cir. 1987).  But it does not follow that just because a plaintiff with one injury has RICO **standing**, that such a single injury sufficiently pleads a RICO **pattern**.  Rather, as Second Circuit law makes clear, to plead a pattern, one of the relevant considerations is the "number of victims," *i.e.* the number of injuries.  *First Capital*, 385 F.3d at 181.

### D.    Plaintiffs Fail the Multi-Factor Test

While the 15-month duration of the scheme alleged is *per se* fatal to Plaintiffs' claims, the RICO claims also fail the multi-factor test that the Second Circuit employs for schemes spanning longer than two years.  *See First Capital*, 385 F.3d at 172, 181 (approximately 10 predicate acts occurring well over two years was insufficient to plead continuity because "[a]t bottom, Plaintiffs have alleged that [defendant] engaged in a single scheme to defraud two creditors by quickly moving his assets . . . and then concealing the existence of those assets"); Mot. 22-26.  Unable to

---

defendant's common misrepresentation to establish causation under RICO."); *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 459 (S.D.N.Y. 2014) (dismissing RICO claim for failure to plead reliance where plaintiff "has not pled that it took any actions in reliance on any of the Defendants' purportedly false statements"); *McGee v. State Farm Mut. Auto Ins. Co.*, 2009 WL 21232439, at *5 n. 9 (E.D.N.Y. July 10, 2009) (although a "plaintiff asserting a RICO claim predicted on mail fraud need not show first-party reliance .  .  .  .  This does not change the fact that mail fraud (and wire fraud) requires conduct calculated to deceive *someone*—whether the plaintiff herself or a third party") (emphasis in original); *Schuh v. Druckman & Sinel, L.L.P.*, 2008 WL 542504, at *9 (S.D.N.Y. Feb. 29, 2008) ("While the mail fraud and wire fraud statutes . . . do not themselves contain a reliance component, it is settled that 'in order to prevail in a civil RICO action predicated on any type of fraud, . . . the plaintiff must establish 'reasonable reliance' on the defendants' purported misrepresentations or omissions.'").

sustain their claims under the multi-factor test, Plaintiffs do not address the analysis contained in the Motion (at 22-26), try to distinguish the cases on which Defendants rely, or make any real effort to do their own multi-factor analysis.[11]

Although the Opposition (at 22) refers vaguely to "multiple victims," Plaintiffs do not identify any victims other than AmBase and its wholly owned subsidiaries, precisely because the TAC does not allege any other "victims." Indeed, it is undisputed that the lenders have lost no money and have not complained about any of the alleged fraudulent statements that Plaintiffs assert. Even after AmBase alleged that it and the lenders supposedly discovered the alleged "fraud," the lenders nevertheless continued to advance funds under the loans. *See* Opp. 10, 21; TAC ¶¶ 318-24, 364, 369-70.

Similarly, notwithstanding Plaintiffs' efforts in the Opposition to chop up the single scheme alleged in the TAC into pieces, the TAC, quite explicitly, alleges only a single "schem*e*" aimed at the sole purpose of "depriving Plaintiffs of their entire $70 million investment." TAC at 2, ¶¶ 5, 7, 8, 59, 60, 81, 123, 129, 300, 408(f), 523 (all referring to a single "schem*e*" to deprive AmBase of its investment). The Second Circuit has cautioned "courts [to] take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO."

---

[11] Plaintiffs attempt to avoid the multi-factor test by arguing "when racketeering acts span nearly three and one-half years," time is the most important factor of the multi-factor test for courts to consider, citing only the non-binding summary order in *Fresh Meadow*. Opp. 20. Binding Second Circuit precedent, however, makes absolutely clear that "while two years may be the *minimum* duration necessary to find closed-ended continuity, the mere fact that predicate acts span two years is insufficient, without more, to support a finding of closed-ended pattern" and thus "other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists." *First Capital*, 385 F.3d at 181. Moreover, *Fresh Meadow* is readily distinguished because "the alleged pattern of racketeering activity was not directed solely at the plaintiffs, but at several other people as well and the predicate acts 'arose out of distinct events' that occurred three and a half years apart." *See Ozbakir v. Scotti*, 764 F. Supp. 2d 556, 570 (W.D.N.Y. 2011) (describing *Fresh Meadow*).

*Schlaifer Nance & Co. v. Estate of Warhol,* 119 F.3d 91, 98 (2d Cir. 1997).  Plaintiffs do just that here.  Plaintiffs allege different methods by which Defendants, on a single real estate project, purportedly improperly obtained and misused Plaintiffs' $70 million investment in the project, causing a single injury to Plaintiffs – the loss of that investment.  *See Western Assocs. L.P. v. Market Square Assocs.,* 235 F.3d 629, 635 (D.C. Cir. 2001) (rejecting plaintiffs' attempt to divide a single scheme into four because "the four schemes . . . are so similar in nature and purposes . . . ., and they resulted in a single harm rather than separate injuries"); *Schlaifer Nance,* 119 F.3d at 98  ("The acts complained of in the schemes . . . are subparts of the singular act.").  In sum, this case involves, at best, allegations of "multiple acts of mail fraud in furtherance of a single episode of fraud involving one victim and relating to one basic transaction" – facts which the Second Circuit has held "cannot constitute the necessary pattern" for RICO purposes.  *Crawford,* 758 F.3d at 489 (citation and quotations omitted).

### E.      Plaintiffs Do Not Allege an Open-Ended Pattern of Racketeering

The Opposition also fails to show open-ended continuity which requires either "[i] the predicate acts were the regular way of operating that business, or [ii] that the nature of the predicate acts themselves implies a threat of continued criminal activity."  *Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 243 (2d Cir. 1999).

Although Plaintiffs argue that the alleged crimes were Defendants' "regular way of doing business," the TAC does not support that assertion and the Opposition cannot point to a single predicate act committed in connection with any "other project."  The allegations cited by the Opposition (at 23) do not involve wrongful acts (e.g., mere cost overruns) or even "other projects" and are vague and nonspecific.  TAC ¶¶ 63-65, 74-78, 215, 289-99, 377.

The absence of allegations showing crime was **Defendants'** "regular way of doing business" cannot be overcome by Plaintiffs referring, outside of the allegations of the TAC, to an

*indictment* of a ***non-party*** subcontractor.  Opp. 23.  There is no allegation that JDS or PMG were even aware of this activity, much less complicit in it.  *See* RJN Exs. C, D.  Further, an indictment of a non-party, on its own, is not probative of anything.  *Devos, Ltd. v. Record*, 2015 WL 9593616, at *15 (E.D.N.Y. Dec. 24, 2015) ("[I]it is well-settled that an indictment is merely an accusatory instrument, and lacks probative value of any wrongdoing.").[12]

Plaintiffs also offer no facts that would support a finding of an ongoing threat of criminal activity or that the scheme alleged was not inherently terminable.  All the TAC alleges are communications in connection with a single scheme and a single project.  Opp. 22.  The Second Circuit has held that mailings sent in furtherance of a single scheme "do not, without more, amount to or suggest a threat of continued criminal activity."  *Crawford*, 758 F.3d at 489.  Similarly, Plaintiffs completely ignore *Efron*, 223 F.3d at 19, which, when faced with identical facts as here, concluded that a purported scheme of squeezing out a joint venture partner did not imply a threat of continuing criminal conduct, particularly where the plaintiffs stopped contributing funds and filed suit against defendants.  Mot. 27-28.  Plaintiffs are also wrong that the foreclosure did not terminate any purported scheme.  Plaintiffs do not allege that Defendants have taken any action since the foreclosure that in any way would have, or could have, allowed Defendants to continue the purported scheme.  Indeed, Plaintiffs have not even made any financial contribution to Defendants or the project since April 2015.  *See GICC*, 67 F.3d at 466 ("It defies logic to suggest that a threat of continued looting activity exists when, as plaintiff admits, there is nothing left to

---

[12] Plaintiffs' claim that the nature of the predicate acts here – solely mail and wire fraud – sufficiently poses a threat of ongoing criminal activity has no legal or factual basis.  Plaintiffs do not address, much less distinguish, *any* of Defendants' cited cases (Mot. 26-28) establishing otherwise, and the cases cited by Plaintiffs (Opp. 22) are readily distinguishable because they involve a substantial number, ranging from 70 to thousands, of predicate acts, concern allegations of far more serious crimes (e.g., extortion, kickbacks, and smuggling), and/or were decided prior to the Second Circuit's decision in *Cofacredit* that clarified the standard for pleading open-ended continuity.

loot").

## II.   THE STRICT FORECLOSURE BREAKS THE CHAIN OF CAUSATION

Rather than address Defendants' proximate cause argument that the loss of Plaintiffs' investment was brought about by an intervening cause – the strict foreclosure by the Junior Mezzanine Lender (TAC ¶¶ 383-84) – Plaintiffs spend nearly three pages of the Opposition making a policy argument that does not salvage their claims.   However, the three policy considerations discussed in *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992), are not a separate test for proximate cause.   *Id.* at 269 (holding proximate cause is a requirement for any RICO claim and discussing policy factors as "reasons" for this).   Indeed, *Holmes* confirms there must be a "direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 268.   Moreover, Plaintiffs ignore the first (and most crucial) *Holmes* "factor," which provides that a RICO claim must be dismissed where, as here, it would be impossible for the Court to "ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other independent factors." *Id.* at 269-70 (quotations omitted).[13]

## III.   PLAINTIFFS' ENTERPRISE ALLEGATIONS FAIL

### A.   Count I Fails to Allege a Distinct RICO Enterprise

Count I of the TAC fails because it does not allege a separate and distinct RICO "enterprise" but merely names corporate defendants, including Sponsor, and its related agents,

---

[13] The cases that Plaintiffs cite for the proposition that a court should allow civil RICO claims to proceed when the claim implicates "complex questions about causation" are not applicable where, as here, the TAC itself alleges a direct intervening cause.   Indeed, the bulk of these cases arose where businesses alleged injuries directly suffered as a result of an employer's hiring of undocumented workers.   Opp. 32 (citing *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Svs., Inc.*, 271 F.3d 374, 383 (2d Cir. 2001); *Williams v. Mohawk Indus.*, 411 F.3d 1252 (11th Cir.); *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602 (6th Cir. 2004)).   Moreover, the plaintiff in *Niemi v. Lasshofer*, 770 F.3d 1331 (10th Cir. 2014) asked the Court to "speculate" about other potential causes of the damages while here the TAC itself alleges an intervening cause.

entities, and employees, thus failing the distinctness requirements.  Accordingly, Count I should be dismissed.  *See Palatkevich v. Choupak*, 2014 WL 1509236, at *15 (S.D.N.Y. Jan. 24, 2014); *R.C.M. Executive Gallery Corp v. Rols Cap. Co.*, 1997 WL 27059, at *8 (S.D.N.Y. Jan. 23, 1997).

### B.   Plaintiffs Do Not Allege That Defendants Phillips or White Were Responsible for Directing any Enterprise's Affairs

The Opposition confirms the showing in the Motion that Count I must be dismissed as to Phillips[14] and White because the TAC fails to allege that either of these defendants engaged in the "operation or management" of the alleged RICO enterprise.

Contrary to Plaintiffs' attempt to water down the "operation and management" requirement, this Circuit has rigorously applied this requirement, with scores of RICO claims being rejected for failure to show that a defendant exercised some control over the enterprise.[15] Indeed, the language of the RICO statute would be "superfluous" unless it required "an element of direction" of the enterprise by the defendant.  *Reeves v. Ernst & Young*, 507 U.S. 170, 178 (1993).

Plaintiffs attempt to satisfy the "operation and management" element by arguing that Phillips and White "were able to exercise significant control" by "causing other employees or agents to take actions . . . ."  Opp. 34.  These allegations, "when reduced to their essentials . . . are really allegations of assistance to the alleged RICO enterprise, not direction of it."  *Schmidt v. Fleet Bank,* 16 F. Supp. 2d 340, 347 (S.D.N.Y. 1998).  Indeed, this Court and others have often dismissed RICO claims against defendants who are alleged to have made important contributions inside RICO enterprises but who do not direct such enterprises.  *See In re Terrorist Attacks on*

---

[14] The Opposition's assertion (at 34) that Phillips was a "principal" of JDS is false and unsupported by the TAC.

[15] *See, e.g.*, *Dale v. Banque SCS Alliance S.A.,* 2005 WL 2347853, at *6 (S.D.N.Y. Sept. 22, 2005); *Schmidt v. Fleet Bank,* 16 F. Supp. 2d 340, 346-47 (S.D.N.Y. 1998); *Redtail Leasing, Inc. v. Bellezza,* 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30, 1997); *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,* 951 F. Supp. 1071, 1090-91 (S.D.N.Y. 1996); *Strong & Fisher, Ltd. v. Maxima Leather, Inc.,* 1993 WL 277205, at *1 (S.D.N.Y. July 22, 1993).

*Sept. 11, 2001*, 392 F. Supp. 2d 539, 565-569 (S.D.N.Y. 2005) (dismissing RICO claims against alleged terrorists because their conduct did not involve direction of enterprise); *Casio Computer Co. v. Sayo*, 2000 WL 1877516, at *21-22 (S.D.N.Y. Oct. 13, 2000) (dismissing RICO claim against defendants whose significant involvement with aiding in the investment and "laundering" of allegedly misappropriated funds did not rise to operation or management of enterprise). Accordingly, because the TAC does not allege that either Phillips or White participated in the operation or management of the enterprise, the RICO claims against them should be dismissed.

## IV.   PLAINTIFFS' CONSPIRACY CLAIMS FAIL

As set forth in the Motion (at 33-35), Plaintiffs' conspiracy claims fail because Defendants (i) do not allege a substantive violation of the RICO act, and (ii) do not allege any agreement between the alleged co-conspirators.  The Opposition does not overcome these defects.

First, as set forth in the Motion, it is well-established that a civil RICO conspiracy claim fails when the underlying substantive civil RICO claims fail.  Plaintiffs' assertion that *Salinas v. United States,* 522 U.S. 52 (1997), authorizes a civil claim for conspiracy despite the dismissal of the underlying violation ignores that *Salinas* was a criminal prosecution, where a conspiracy is a crime in and of itself.

Second, as set forth in the Motion, Plaintiffs' conspiracy claims should be dismissed for the additional reason that Plaintiffs have not sufficiently pled any agreement amongst the Defendants.  Although conspiracy allegations need only meet the requirements of Rule 8(a), "the complaint must allege some factual basis for a finding of a conscious agreement among the defendants." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990).  To conceal this deficiency, Plaintiffs cobble together a list of allegations concerning Stern, Phillips, White, and Maloney's alleged actions.  But these allegations provide no basis to infer the existence of an agreement between these defendants to violate the law.  Rather, to survive a motion to dismiss,

a RICO conspiracy claim must "state with specificity what the agreement was, who entered into the agreement, when the agreement commenced, and what actions were taken in furtherance of it." *FD Prop. Holding, Inc. v. US Traffic Corp.*, 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002) (quotation omitted).  The TAC is noticeably, and fatally, devoid of these allegations.  *See Hecht*, 897 F.2d at 25 (affirming dismissal of conspiracy claim where complaint "does not allege facts implying any agreement involving each of the defendants to commit at least two predicate acts"); *Adler v. Berg Harmon Assoc.*, 790 F. Supp. 1222, 1234 (S.D.N.Y. 1992) (dismissing conspiracy claim with no factual allegations supporting an inference that the defendants consciously agreed to become part of a RICO conspiracy); *Flexborrow LLC v. TD Auto Finance LLC*, 255 F. Supp. 3d 406, 425 (E.D.N.Y. 2017) (dismissing claim where "plaintiffs have only summarily alleged that there was an illicit agreement" between the defendant and others who committed crimes).

## V.    PLAINTIFFS' FRAUD CLAIM MUST BE DISMISSED

### A.    Plaintiff Cannot Demonstrate a Fraudulent Misrepresentation Collateral or Extraneous to the Contract

Plaintiffs argue that their fraud claim is viable because it alleges misrepresentations "collateral or extraneous to the contract."   Opp. 36.   However, a misrepresentation is collateral or extraneous only if it is "not integrated into the contract at issue." *The Topps Co. Inc., v. Cadbury Stani S.A.I.C.*, 380 F.Supp.2d 250, 264 (S.D.N.Y. 2005).  Here, however, each of Plaintiffs' fraud allegations relates to specific terms or provisions of the contracts.  Mot. 35-37.  Accordingly, Plaintiffs' fraud claim cannot stand.  *See Four Finger Art Factory, Inc. v. Dinicola*, 2000 WL 145466, at *5 (S.D.N.Y. Feb. 9, 2000) (dismissing fraud allegations which "concern matters which are specifically covered by the contract"); *MashreqBank, psc v. ING Grp. N.V.*, 2013 WL 5780824, at *5 (S.D.N.Y. Oct. 25, 2013) (dismissing fraud claim where "[a]ll of the fraud allegations are tied to the contracts between the parties, and the core of these allegations actually repeat the substance of the breach of contract allegations.").

Moreover, Plaintiffs have not alleged any "special damages unrecoverable on a contract theory . . . ." *Advanced Marine Techs., Inc. v. Burnham Sec., Inc.*, 16 F. Supp. 2d 375, 383 (S.D.N.Y. 1998).   While Plaintiffs contend that one – and only one – of the purported misrepresentations upon which they premise their fraud claim "induced Ambase to invest additional money," these alleged damages are identical to the measure of damages that Plaintiffs could recover in the event that they prevail on their breach of contract claim and therefore are not independent of its contract damages.   Indeed, "Rule 9(g) requires that special damages be pleaded specifically," *id.*, but the TAC does not specify the purported "special damages" Defendants seek (or any special damages at all).   Accordingly, Plaintiffs fraud claim must be dismissed.

### B.      Plaintiffs' Collective Pleading Is Insufficient

Although Plaintiffs contend (Opp. 37) that the TAC is pled with enough specificity to survive the Motion, Plaintiffs are wrong.   Rather, Plaintiffs fail to allege specifically the specific misrepresentations and acts of each Defendant.   This pleading deficiency alone merits dismissal of the TAC.   *See, e.g.*, *Am. Sales Co., Inc. v. AstraZeneca AB*, 2011 WL 1465786, at *5 (S.D.N.Y. Apr. 14, 2011) ("Complaint's lack of clarity in attributing conduct traceable to the [separate defendants] is a basis for dismissal of claims against them").

## VI.   PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTY FAILS

Plaintiffs fail to rebut the Motion's showing that the fiduciary duty claim cannot lie because the Supreme Court previously held that no such duties exist.   Mot. 38-39.   Indeed, Plaintiffs merely resort to making the same arguments that they already made (unsuccessfully) in the Supreme Court.   *See* Dkt. No. 156 at 30-31, n.28.   Accordingly, because no defendant owed Plaintiffs any fiduciary duties, Plaintiffs' breach of fiduciary duty claim must be dismissed.

## VII.   THE PREVIOUSLY DISMISSED BREACH OF CONTRACT CLAIMS MUST BE DISMISSED

Plaintiffs blatantly misrepresent the Decision in seeking to avoid dismissal of the three breach of contract claims that the Decision already held are legally insufficient. *See* TAC ¶ 481(a); Decision at 16-17; TAC ¶¶ 483-90; Decision at 26-28; TAC ¶ 550; Decision at 15-16 and 25-26. Under the law of the case doctrine, these claims must again be dismissed.

## VIII.   THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION

"It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006). Pursuant to this direction, courts of this Circuit have repeatedly rejected supplemental jurisdiction over state law claims after RICO claims were dismissed. *See, e.g., First Capital*, 385 F.3d at 183; *Flexborrow*, 255 F. Supp. 3d at 425-26; *FindTheBest.com*, 20 F. Supp. 3d at 461; *Davis v. Yeroushalmi*, 985 F. Supp. 2d 349, 363 (E.D.N.Y. 2013). Plaintiffs do not cite a single case where a court exercised supplemental jurisdiction over state law claims after dismissing federal RICO claims prior to discovery in the federal court.

Plaintiffs' argument that "fairness" dictates a different result here has no support in law or the facts. In *Motorola Credit Corp. v. Uzan*, although federal RICO claims had been dismissed, "the Court ha[d] not only spent considerable time dealing with the legal issues and becoming fully conversant with the facts but *also* ha[d] conducted a trial on the merits" and thus "it would have 'stood judicial economy on its head' not to proceed with the state law claims." 388 F.3d 39, 56 (2d Cir. 2004) (citations and quotations omitted). In *Johnson v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605, 616-17 (S.D.N.Y. 2016), the court simply exercised supplemental jurisdiction over state law claims that related to the same issues as the ***pending*** federal claims. Here, if this

Court dismisses the RICO claims, that will constitute the totality of this Court's substantive involvement with this case.

Plaintiffs cannot show how this case is any different than all the others that declined jurisdiction over purely state law claims.  Any delay that Plaintiffs may experience from remand is entirely of their own making due to Plaintiffs repeatedly amending their complaint to assert numerous insufficient claims.  Plaintiffs also have no support for their assertion that "Defendants have set up new dummy corporations" that would prevent Plaintiffs from recovering.  This assertion is both unsupported and untrue, and, even if true (which it is not), Plaintiffs can seek appropriate redress from the state court.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion to Dismiss in its entirety.

Dated: October 2, 2018

KATSKY KORINS LLP

By:    /s/ Joel S. Weiss
    Joel S. Weiss
    (jweiss@katskykorins.com)
    Robert A. Abrams
    (rabrams@katskykorins.com)
    Haley E. Adams
    (hadams@katskykorins.com)

605 Third Avenue
New York, New York 10158
Tel:  (212) 953-6000

*Counsel for Defendants PMG West 57th Street LLC, 111 West 57th KM Equity LLC, 111 West 57th KM Group LLC, Kevin Maloney, Ned White, and Property Markets Group, Inc.*

*Co-Counsel for Defendants 111 West 57th Sponsor LLC, 111 West 57th Control LLC, 111 West 57th Developer LLC, 111 Construction Manager LLC, and 111 West 57th Partners LLC*

KASOWITZ BENSON TORRES LLP

By:    /s/ Paul M. O'Connor III
    Paul M. O'Connor III
    (poconnor@kasowitz.com)
    Jed I. Bergman
    (jbergman@kasowitz.com)
    Jennifer McDougall
    (jmcdougall@kasowitz.com)

1633 Broadway
New York, New York 10019
Tel:  (212) 506-1700

*Counsel for Defendants 111 West 57th JDS LLC, Michael Stern, Matthew Phillips, JDS Development LLC, and JDS Construction Group LLC*

*Co-Counsel for Defendants 111 West 57th Sponsor LLC, 111 West 57th Control LLC, 111 West 57th Developer LLC, 111 Construction Manager LLC, and 111 West 57th Partners LLC*