UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMBASE CORPORATION, 111 WEST 57TH MANAGER FUNDING LLC, and 111 WEST 57TH INVESTMENT LLC, on behalf of itself and derivatively on behalf of 111 WEST 57TH PARTNERS LLC,<br><br>       Plaintiffs,<br><br> -against-<br><br>111 WEST 57TH SPONSOR LLC, 111 WEST 57TH JDS LLC, PMG WEST 57TH STREET LLC, 111 WEST 57TH CONTROL LLC, 111 WEST 57TH DEVELOPER LLC, 111 WEST 57TH KM EQUITY LLC, 111 WEST 57TH KM GROUP LLC, KEVIN MALONEY, MATTHEW PHILLIPS, MICHAEL STERN, NED WHITE, 111 CONSTRUCTION MANAGER LLC, PROPERTY MARKETS GROUP, INC., JDS DEVELOPMENT LLC, and JDS CONSTRUCTION GROUP LLC,<br><br>       Defendants,<br><br>111 WEST 57TH PARTNERS LLC,<br><br>       Nominal Defendant. | Docket No. 1:18-cv-5482(AT) |

**REPLY IN SUPPORT OF PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE**

  Plaintiffs AmBase Corporation, 111 West 57th Manager Funding LLC, and 111 West 57th Investment LLC, on behalf of itself and derivatively on behalf of 111 West 57th Partners LLC ("the Company"), (collectively, "Plaintiffs" or "AmBase") respectfully submit this reply in support of their Request for Judicial Notice (Sept. 11, 2018), ECF No. 48 ("RJN").[1]

---

[1] Defendants' Opposition to Plaintiffs' Request for Judicial Notice (Oct. 2, 2018), ECF No. 54, is cited herein as "RJN Opp." The Request for Judicial Notice is submitted in support of Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Third Amended Complaint (Sept. 11, 2018), ECF No. 47 ("Opp."). The Third Amended Complaint ("TAC") is attached as Exhibit 1 to the Declaration of Jennifer McDougall (Aug. 7, 2018), ECF

**PRELIMINARY STATEMENT**

Defendants' opposition to Plaintiffs' request for judicial notice is consistent with their broader campaign to translate their motion to dismiss into a trial on the merits of Plaintiffs' claims. Just as they repeatedly ask the Court to draw factual inferences in their favor to dismiss Plaintiffs' claims, *see, e.g.*, Opp. at 22, 30, so too do they protest that the Court is not permitted to treat the documents Plaintiffs have submitted as conclusive of the facts stated therein. Defendants misunderstand both the Court's function on a motion to dismiss and the nature of Plaintiffs' request.

On a motion to dismiss, the Court is not resolving factual disputes. Instead, it is testing "the formal sufficiency of . . . a claim for relief *without* resolving a contest regarding its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (emphasis added). For that reason, Plaintiffs have not asked the Court to credit the factual content of the documents of which they seek judicial notice. Instead, they ask the Court to take judicial notice of their existence, which is something Rule 201 plainly permits it to do. Ultimately, Plaintiffs' request and Defendants' opposition are two ships passing in the night: For the most part, Defendants do not deny that the Court may take judicial notice of the matters of which Plaintiffs seek judicial notice, and Plaintiffs do not ask the Court to take judicial notice of the matters of which Defendants argue judicial notice is improper. For that reason, the Court should grant Plaintiffs' request for judicial notice.

**ARGUMENT**

**I.  Judicial Notice of Documents Relating to the Strict Foreclosure.**

Plaintiffs ask the Court to take judicial notice of an affirmation, tax records, and an article that tend to show that Defendants Michael Stern and Kevin Maloney entered into a backroom deal

---

No. 36 ("McDougall Decl."). Defendants' Memorandum of Law in Support of their Motion to Dismiss (Aug. 7, 2018), ECF No. 37, is cited herein as "Mot."

with the projects' lenders to consent to the strict foreclosure in exchange for an economic interest in the project after foreclosure, that they and their affiliates remain involved in the project, and that ownership of the project has changed hands multiple times. RJN Exs. A, B, F.

Defendants do not dispute that the documents are eligible for judicial notice, but instead insist that the Court cannot take judicial notice of the facts asserted therein. Plaintiffs do not dispute this general rule; nor do they invite the Court to transgress it. Plaintiffs adequately alleged RICO claims in the TAC, and the Court need not accept these additional sources for truth of the matters asserted therein to deny Defendants' motion to dismiss. (That is why, as Defendants point out, RJN Opp. at 2, 4, Plaintiffs barely discuss the sources in their argument section.)

Plaintiffs seek judicial notice of these documents because *Defendants* invite the Court to draw factual inferences beyond the scope of the TAC concerning the cause and result of the foreclosure. They do so by arguing (1) that Plaintiffs cannot show an ongoing threat of criminal activity because Defendants' scheme "had a definitive endpoint when, in June 2017, the Junior Mezzanine Lender foreclosed,'" Mot. at 28, and (2) that the foreclosure rather than their criminal activity caused Plaintiffs' injuries, *id.* at 29–30. Indeed, Defendants themselves seek to marshal support for their account from a source extrinsic to the complaint—an affirmation filed in *AmBase Corp. v. Spruce Capital Partners LLC*, Index No. 655031/2017 (N.Y. Sup. Ct. N.Y. Cty.)— without even requesting judicial notice. Mot. at 30 (citing McDougall Decl. Ex. 4).

These arguments are both irrelevant, Opp. at 21–22, 29–32 (foreclosure does not figure into continuity inquiry and does not sever causal connection), and procedurally improper, *id.* at 22, 33 (arguments call for court to resolve factual disputes on a motion to dismiss). But they also paint an inaccurate picture. Plaintiffs seek to cast doubt on this picture by offering a copy of a further affirmation filed *in the same case* as the affirmation on which Defendants rely and two

3

additional sources that corroborate the affirmation's allegations. *See Harley v. The City of New York*, 2016 WL 552477, at *3 (E.D.N.Y. Feb. 10, 2016) (taking judicial notice of extrinsic material offered in response to extrinsic material from the same source offered by opposing party). These sources are offered not to *establish* that Defendants consented to the strict foreclosure in exchange for a stake in the project, but rather to underscore the impropriety of their desperate bid for the Court to draw factual inferences in their favor. By revealing that discovery is likely to turn up inculpatory evidence concerning causation and an ongoing threat of criminal activity, these sources illustrate the reason for eschewing factual inferences against Plaintiffs before they have had the opportunity to investigate their claims by means of discovery. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).

Plaintiffs offer the tax documents for the further purpose of supporting their argument that the Court should exercise supplemental jurisdiction over Plaintiffs' state-law claims in the unlikely event that the Court dismisses Plaintiffs' federal claims. Opp. at 40. These tax records report two transfers of real property in which those defendants held an indirect interest. TAC Ex. B. Plaintiffs do not ask the Court to take judicial notice of the fact that the transfers actually occurred or of the amount of tax that was paid, but only of the fact that someone is recording transfers of the 111 West 57th Street property or indirect interests therein. Because such filings raise serious questions about whether certain defendants will have any assets to satisfy judgments against them, the interests of justice disfavor a remand and the delay it will cause. Opp. at 40.

**II.     Judicial Notice of Documents Relating to Indictment of Subcontractor.**

Defendants object to an attorney affirmation, government press release, and article about the indictment of Parkside, a contractor, for wage theft and insurance fraud in connection with 111 West 57th Street and another JDS project. RJN Exs. C–E.

As an initial matter, Defendants point out that a quotation attributed to Stern in THE REAL DEAL article does not refer to the most recent set of allegations concerning Parkside. Plaintiffs acknowledge this unintentional error and apologize. Placed in its proper context, however, the quotation is worse. It originally appeared in an article printed shortly after Stern hired Parkside to perform concrete work at 111 West 57th Street. James King, *Stern to Unions: You're Done in This Town*, COMMERCIAL OBSERVER (May 12, 2015), https://bit.ly/2nbKsvw. Based on the context of the original article, Stern offered this flippant response to questions about Parkside's mob ties and poor safety record: "If everybody wanted to hire a choir boy to do construction in New York City, there would be no construction in New York City." *Id.* It would be one thing if he made this observation *after the indictment*, in an effort to absolve himself of criminal conduct by a contractor he had believed in good faith to be honest, even if only by his low standards. That Stern hired Parkside with both eyes open makes Parkside's subsequent criminal conduct on the project even more probative of Stern's own attitude toward the law and the threat of ongoing criminal activity that attitude poses.

Defendants next complain that Plaintiffs invite the Court to take judicial notice of the facts asserted in the documents to conclude that Stern and Maloney participated in Parkside's criminal scheme. RJN Opp. at 5. Not so. Instead, Plaintiffs ask the Court take judicial notice of the existence of these sources, as their mere existence affords Plaintiffs good faith bases to make additional allegations in support of the pattern element of their RICO claims. The existence of an indictment is not conclusive of guilt, but it creates a presumption of probable cause for believing that the conduct alleged therein occurred. *See Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). That the fraud occurred at 111 West 57th Street and another JDS project—a fact corroborated by

the Manhattan District Attorney's online version of the press release[2]—and that Stern pursued Parkside so persistently (and underhandedly), TAC ¶¶ 294–95, together create suspicions of pervasive criminal conduct on JDS projects.

Plaintiffs maintain that their TAC adequately alleges a pattern of racketeering activity. In the unlikely event that the Court were to conclude otherwise, however, these sources show that an amendment of Plaintiffs' RICO claims would not be futile. Defendants object that Plaintiffs "declined an opportunity to seek leave to amend the TAC before the Motion was filed." RJN Opp. at 1. Plaintiffs saw (and continue to see) no need to seek leave, but expressly reserved the right to do so if the need arose. Letter from David H. Thompson to the Honorable Analisa Torres at 1 n.1 (July 24, 2018), ECF No. 31. Having already crossed the threshold to state a valid claim, Plaintiffs preserve judicial and party resources by not amending every time their claims become marginally stronger. Indeed, if Plaintiffs sought leave to amend every time new evidence of Defendant's pervasive criminal scheme came to their attention, the process of amendment would never end. *See, e.g.*, Letter from David H. Thompson to the Honorable Analisa Torres (Oct. 3, 2018), ECF No. 52 (apprising the Court of evidence that Defendants may have redirected the proceeds of an insurance fund they fraudulently placed in the name of Defendant JDS Construction Group); Complaint, *Baltic Fourth LLC v. Stern*, Index No. 654881/2018 (N.Y. Sup. Ct. N.Y. Cty. Oct. 2, 2018), available at https://bit.ly/2IKu52A (alleging that Stern and JDS Construction committed payroll and insurance fraud on another project).

---

[2] Press Release, New York County District Attorney, DA Vance, Partners Announce Criminal Charges in Multimillion Dollar Wage Theft and Insurance Fraud Case (May 16, 2018), https://bit.ly/2kNPVqA.

### III.     Judicial Notice of ████████████████.

Finally, Defendants argue that the Court should not take judicial notice of the ████████ ████████ because they are irrelevant. RJN Exs. G, H. In doing so, Defendants appear to mistake inconclusiveness for irrelevance. It is true that ████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████.

In any event, Plaintiffs maintain that RICO claims are adequately alleged on the face of their TAC. ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court take judicial notice of the affirmations, press release, news articles, and ████████ appended to their request.

| | |
|---|---|
| Dated: October 9, 2018 | Respectfully submitted, |
| **MEISTER SEELIG & FEIN LLP** | **COOPER & KIRK, PLLC** |
| */s/ Kevin Fritz/* | s/ David H. Thompson |
| Stephen B. Meister, Esq. | David H. Thompson* |
| Stacey M. Ashby, Esq. | Peter A. Patterson* |
| Kevin A. Fritz, Esq. | Brian W. Barnes* |
| Eugene Meyers, Esq. | Nicole J. Moss* |
| 125 Park Avenue, 7th Floor | Haley N. Proctor* |
| New York, New York 10017 | * *Admitted Pro Hac Vice* |
| Phone: (212) 655-3500 | 1523 New Hampshire Avenue, N.W. |
| sbm@msf-law.com | Washington, D.C. 20036 |
| *Attorneys for Plaintiffs* | (202) 220-9600 |
| | dthompson@cooperkirk.com |
| | *Attorneys for Plaintiffs* |